UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PROSPERITY RECOVERY, INC., <br><br> Plaintiff, <br><br> v. <br><br> IDC TECHNOLOGIES, INC, et al., <br><br> Defendants. | Case No. 20-CV-03679-LHK <br><br> **ORDER DENYING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT** <br><br> Re: Dkt. No. 62 |

Before the Court is Plaintiff Prosperity Recovery, Inc.'s ("Plaintiff") renewed motion for default judgment as to Plaintiff's claims against Defendants Innova Consulting Services LLC ("Innova") and Vivos Group, Inc. ("Vivos"). ECF No. 62.[1] Having considered Plaintiff's submissions, the relevant law, and the record in this case, the Court DENIES Plaintiff's motion for default judgment and DISMISSES Plaintiff's claims against Innova and Vivos with prejudice.

## I. BACKGROUND

This case arises from the parties' disputes over two related contracts: (1) a "Professional

---

[1] Plaintiff's motion for default judgment contains a notice of motion that is separately paginated from the points and authorities in support of the motion. Civil Local Rule 7-2(b) requires that the notice of motion and the points and authorities in support of the motion be contained in one document with the same pagination for a total of no more than 25 pages. *See* Civ. Loc. R. 7-2(b).

1
Case No. 20-CV-03679-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

Services Agreement" ("PSA") between Innova and Defendant IDC Technologies, Inc. ("IDC"), ECF No. 1 ¶¶ 16–17; and (2) a "Factoring and Security Agreement" ("FSA") between Innova, Vivos, and Plaintiff, *id.* ¶¶ 11–12. As relevant to the instant motion, Plaintiff asserts that Innova and Vivos breached the FSA and that, pursuant to the FSA, Plaintiff has the exclusive right to collect payments owed by IDC to Innova for work performed under the PSA. Below, the Court describes in turn: (1) the parties; (2) the PSA; (3) the FSA; (4) the parties' disputes regarding payments owed by IDC to Innova for work performed under the PSA; and (5) the procedural history of the instant case.

**A. The Parties**

Plaintiff Prosperity is a North Carolina corporation with its corporate headquarters in North Carolina. ECF No. 1 ¶ 1 ("Compl."). Plaintiff is in the "factoring" business, which involves the buying and selling of assets called "Accounts." *Id.* ¶ 9. In this context, the term "Account" refers to a party's right to demand payment for goods or services that the party already has supplied. *See id.*; Cal. Com. Code § 9102(a)(2). Plaintiff purchases Accounts from companies and then attempts to collect payments on the Accounts from the companies' customers ("Account Debtors"). Compl. ¶ 9; Cal. Com. Code § 9102(a)(3).

Defendant IDC is a California corporation with its corporate headquarters in California. Compl. ¶ 2. IDC is "engaged in the business of providing information technology services." *Id.*, Exhibit C, Recitals. IDC's clients are "located in USA and Canada." *Id.*

Defendant Innova is a Delaware limited liability company with two members. *Id.* ¶ 4. Because both of Innova's members are residents of Virginia, Innova is a resident of Virginia. *Id.* Innova provides consulting services to information technology companies. *Id.*, Exhibit C, Recitals.

Defendant Vivos is a Delaware corporation with its corporate headquarters in Delaware. *Id.* ¶ 3. According to a declaration submitted by Plaintiff with the instant motion, Vivos owned "all of Innova's membership interests" and "had control of Innova's assets" during the period of time that is relevant to the instant case. ECF No. 62-1 ¶ 18.

### B. The Professional Services Agreement

On July 15, 2018, Innova entered a "Professional Services Agreement" ("PSA") with IDC. *See* Compl. ¶ 16; *id.*, Exhibit C. Under the PSA, Innova agreed to supply IDC with consultants who would perform work for IDC's clients. *See id.* ¶ 16; *id.*, Exhibit C, Recitals. "In return, IDC agreed to pay Innova for the hours worked by Innova's consultants for IDC's end-clients." *See* ECF No. 21 ¶ 9. However, the PSA specified that Innova would continue to be responsible for paying these consultants' wages and that Innova's failure to do so after seven days' notice would give IDC the right to terminate the PSA. *See id.* ¶ 10; Compl., Exhibit C § 1.

The PSA also provided that, to receive payment for supplying consultants to IDC's clients, Innova would have to submit monthly invoices that met certain requirements. *See* Compl. ¶ 17. Specifically, the invoices had to be based on hourly timesheets that were approved by IDC's clients. *See id.* The PSA also entitled IDC to withhold any payment that IDC's clients disputed in good faith. *See id.*

Pursuant to the PSA, Innova supplied IDC's clients with multiple consultants from August 2018 through September 2019. *See id.* ¶ 31.

### C. The Factoring and Security Agreement

On August 13, 2018, Plaintiff entered a "Factoring and Security Agreement" ("FSA") with Innova and Vivos. Compl. ¶ 11. Under the FSA, Plaintiff agreed to purchase certain Accounts ("Purchased Accounts") from Innova and Vivos and to provide Innova and Vivos with loans for running their businesses. *Id.* ¶ 12. To secure the loans, Plaintiff acquired an interest in all of Innova's and Vivos's assets, including all Accounts not included in the Purchased Accounts ("Remaining Accounts"). *Id.* ¶ 13.

Additionally, Innova and Vivos appointed Plaintiff as their "attorney-in-fact." *Id.* ¶ 14. This appointment gave Plaintiff several powers with respect to the Purchased Accounts and the Remaining Accounts. *Id.* For example, Plaintiff obtained the power to receive and to distribute payments owed to Innova and Vivos on all Accounts; the power to notify Account Debtors for all Accounts that payments should be made directly to Plaintiff; the power to file suit to collect

payments owed on Purchased Accounts; and the power to contact Account Debtors for any purpose. *Id.*; *see also id.*, Exhibit A at 6.

Finally, the FSA defined several "Events of Default" and provided Plaintiff with additional powers "[u]pon the occurrence of any Event of Default." *See id.* ¶ 14; *id.*, Exhibit A at 10. Most importantly, the FSA provided that any Event of Default would allow Plaintiff to "collect all Accounts, regardless of whether such Accounts are Purchased Accounts." *See id.* ¶ 14; *id.*, Exhibit A at 10.

### D. The Parties' Disputes Over Payments Owed to Innova Under the Professional Services Agreement

Because certain payments owed by IDC to Innova for work performed under the PSA were included in the Purchased Accounts, the FSA gave Plaintiff the right to collect those payments from IDC. Compl. ¶ 24. Additionally, because the remaining payments owed by IDC to Innova for work performed under the PSA were included in the Remaining Accounts, the FSA gave Plaintiff a security interest in those remaining payments. *Id.* ¶ 31.

On August 17, 2018, Plaintiff sent IDC a notice stating that Plaintiff had acquired an interest in all payments owed by IDC to Innova for work performed under the PSA. *Id.* ¶ 20. The notice requested that IDC make those payments directly to Plaintiff. *Id.* On August 28, 2018, IDC acknowledged receipt of Plaintiff's notice. *See id.* ¶ 21; *id.*, Exhibit D.

Plaintiff alleges that in August 2019, Innova and Vivos defaulted on their obligations under the FSA. *See id.* ¶ 40. According to Plaintiff, this default entitled Plaintiff to "collect on all Accounts," including the payments owed by IDC to Innova for work performed under the PSA. *Id.* ¶ 41.

Plaintiff further alleges that, although IDC initially paid Plaintiff the amounts owed to Innova under the PSA, IDC stopped making payments without any explanation. *Id.* ¶ 24. Specifically, Plaintiff alleges that IDC has failed to pay $1,315,123.83 owed to Innova for work performed under the PSA between August 2018 and September 2019. *Id.* ¶ 31.

### E. Procedural History

4
Case No. 20-CV-03679-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

1    On June 3, 2020, Plaintiff filed a complaint asserting six claims against Innova, Vivos, and
2    IDC. *See* Compl. ¶¶ 43–101.  Specifically, Plaintiff asserted: (1) a breach of contract claim
3    against IDC, *id.* ¶¶ 43–58; (2) a services rendered claim against IDC, *id.* ¶¶ 59–66; (3) an account
4    stated claim against IDC, *id.* ¶¶ 67–76; (4) a declaratory judgment claim against Innova, Vivo, and
5    IDC, *id.* ¶¶ 77–81; (5) a promissory estoppel claim against IDC, *id.* ¶¶ 82–92; and (6) a breach of
6    contract claim against Innova and Vivos, *id.* ¶¶ 93–101.

7    On June 8, 2020, Plaintiff served each defendant with the complaint.  ECF Nos. 8–10.
8    Accordingly, the deadline for each defendant to respond was June 29, 2020. *See* Federal Rule of
9    Civil Procedure 12(a)(1)(A)(i).  On June 17, 2020, Plaintiff and IDC filed a joint stipulation
10   extending IDC's deadline to respond to the complaint to July 14, 2020.  ECF No. 12.  On July 14,
11   2020, IDC filed an answer to Plaintiff's complaint.  ECF No. 20.

12   On July 17, 2020, Plaintiff filed a motion for entry of default as to Innova and Vivos.  ECF
13   Nos. 23, 24.  On July 20, 2020, the Clerk entered defaults as to Innova and Vivos.  ECF Nos. 25,
14   26.

15   On March 25, 2021, Plaintiff filed a motion for default judgment as to Innova and Vivos
16   with respect to Plaintiff's declaratory judgment claim and with respect to Plaintiff's breach of
17   contract claim against Innova and Vivos.  ECF No. 54.

18   On June 17, 2021, the Court denied Plaintiff's motion for default judgment because
19   Plaintiff had failed to address subject matter jurisdiction and personal jurisdiction.  ECF No. 59 at
20   1–2.  Although the Court granted Plaintiff leave to file a renewed motion for default judgment, the
21   Court warned that Plaintiff's failure to cure the jurisdictional deficiencies would result in denial of
22   a subsequent motion for default judgment with prejudice.  *Id.* at 2.

23   On June 29, 2021, Plaintiff filed a renewed motion for default judgment as to Innova and
24   Vivos.  ECF No. 62.

## II. REQUESTS FOR JUDICIAL NOTICE

26   The Court may take judicial notice of matters that are either "generally known within the
27   trial court's territorial jurisdiction" or "can be accurately and readily determined from sources

5
Case No. 20-CV-03679-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

1    whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).  Moreover, courts may

2    consider materials referenced in the complaint under the incorporation by reference doctrine, even

3    if a plaintiff failed to attach those materials to the complaint.  *Knievel v. ESPN*, 393 F.3d 1068,

4    1076 (9th Cir. 2005).  Public records, including judgments and other publicly filed documents, are

5    proper subjects of judicial notice.  *See, e.g.*, *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir.

6    2007).  However, to the extent any facts in documents subject to judicial notice are subject to

7    reasonable dispute, the Court will not take judicial notice of those facts.  *See Lee v. City of Los*

8    *Angeles*, 250 F.3d 668, 689 (9th Cir. 2001), *overruled on other grounds by Galbraith v. County of*

9    *Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

10         In connection with Plaintiff's renewed motion for default judgment, Plaintiff requests

11    judicial notice of a state court complaint filed by Innova against IDC (Ex. 7); Innova's application

12    to the California Secretary of State to do business in California (Ex. 13); Innova's March 22, 2019

13    Statement of Information filed with the California Secretary of State (Ex. 14); and Innova's

14    December 13, 2019 Statement of Information filed with the California Secretary of State (Ex. 15).

15    *See* ECF No. 62-3.

16         Each of these exhibits is a matter of public record and is therefore the proper subject of

17    judicial notice.  *See Black*, 482 F.3d at 1041.  Thus, the Court GRANTS Plaintiff's request for

18    judicial notice.

19    **III.   LEGAL STANDARD**

20         Pursuant to Federal Rule of Civil Procedure 55(b)(2), the Court may enter a default

21    judgment when the Clerk, under Rule 55(a), has previously entered a party's default.  Fed. R. Civ.

22    P. 55(b).  "The district court's decision whether to enter a default judgment is a discretionary one."

23    *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  Once the Clerk enters default, all well-

24    pleaded allegations regarding liability are taken as true, except with respect to damages.  *See Fair*

25    *Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002) ("With respect to the determination

26    of liability and the default judgment itself, the general rule is that well-pled allegations in the

27    complaint regarding liability are deemed true."); *TeleVideo Sys. v. Heidenthal*, 826 F.2d 915, 917–

1   18 (9th Cir. 1987) ("[U]pon default the factual allegations of the complaint, except those relating

2   to the amount of damages, will be taken as true."). However, the "defendant is not held to admit

3   facts that are not well-pleaded or to admit conclusions of law." *See DIRECTV, Inc. v. Hoa Huynh*,

4   503 F.3d 847, 854 (9th Cir. 2007).

5         As a threshold step, "when entry of judgment is sought against a party who has failed to

6   plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over

7   both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) (citations

8   omitted). Indeed, a "judgment entered without personal jurisdiction over the parties is void." *Id.*

9   Additionally, "the party seeking to invoke the court's jurisdiction bears the burden of establishing

10  that jurisdiction exists." *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (citing *Data Disc,*

11  *Inc. v. Sys. Tech. Assocs.*, 557 F.2d 1280, 1285 (9th Cir. 1977)).

12        "Factors which may be considered by courts in exercising discretion as to the entry of a

13  default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of

14  plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in

15  the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was

16  due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil

17  Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir.

18  1986).

19  **IV.  DISCUSSION**

20        Plaintiff seeks default judgment as to Innova and Vivos with respect to two claims: (1) the

21  declaratory judgment claim against Innova, Vivos, and IDC; and (2) the breach of contract claim

22  against Innova and Vivos. Mot. at 2. Specifically, with respect to the declaratory judgment claim,

23  Plaintiff seeks a judgment declaring that Plaintiff "holds the sole right to payment" on all

24  monetary obligations owed by IDC to Innova for work performed under the Professional Services

25  Agreement ("PSA"). *Id*. In turn, with respect to the breach of contract claim, Plaintiff seeks a

26  judgment that Innova and Vivos defaulted on their obligations under the Factoring and Security

27  Agreement ("FSA") and thereby caused Plaintiff damages "in the total amount of $1,284,427.37,

28

inclusive of prejudgment interest." *Id.*

For the reasons below, the Court finds that Plaintiff has not established personal jurisdiction over Innova and Vivos. Accordingly, the Court need not address whether Plaintiff has satisfied the other requirements necessary for an entry of default judgment.

"[A] judgment entered without personal jurisdiction over the parties is void." *In re Tuli*, 172 F.3d at 712. Moreover, "[t]he party seeking to invoke the court's jurisdiction bears the burden of establishing that jurisdiction exists." *Breeland*, 792 F.2d at 927 (citation omitted); *In re Boon Glob. Ltd.*, 923 F.3d 643, 650 (9th Cir. 2019) (explaining that it is the "party asserting jurisdiction [that] bears the burden to establish jurisdictional facts."). The Court previously denied Plaintiff's motion for default judgment without prejudice because Plaintiff failed to establish the Court's subject matter jurisdiction and the Court's personal jurisdiction over Innova and Vivos. ECF No. 59 at 1–2. The Court warned Plaintiff that if it failed to cure these jurisdictional deficiencies, the Court would deny a subsequent motion for default judgment with prejudice. *Id.* at 2.

Personal jurisdiction over an out-of-state defendant is appropriate if the relevant state's long-arm statute permits the assertion of jurisdiction without violating federal due process. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800–01 (9th Cir. 2004). California's long-arm statute, Cal. Civ. Proc. Code § 410.10, is co-extensive with federal due process requirements, and therefore the jurisdictional analyses under California law and federal due process merge into one. *See* Cal. Civ. Proc. Code § 410.10 ("[A] court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States."); *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) ("California's long-arm statute . . . is coextensive with federal due process requirements, so the jurisdictional analyses under state law and federal due process are the same.").

For a court to exercise personal jurisdiction over a defendant consistent with due process, that defendant must have "certain minimum contacts" with the relevant forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457,

8

463 (1940)). In addition, "the defendant's 'conduct and connection with the forum State' must be such that the defendant 'should reasonably anticipate being haled into court there.'" *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

A court may exercise either general or specific personal jurisdiction over a defendant. *See Ziegler v. Indian River Cty.*, 64 F.3d 470, 473 (9th Cir. 1995). Plaintiff contends that Innova and Vivos are subject both to general and specific personal jurisdiction in California. Mot. 62 at 17–21. The Court addresses each argument in turn.

### A. Plaintiff Has Failed to Show that Innova and Vivos Are Subject to General Jurisdiction in California

Plaintiff argues that Innova and Vivos are subject to general jurisdiction in California because they have "substantial, continuous, and systematic" contacts with California. Mot. at 18. For the reasons below, the Court rejects this argument.

"A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). "The paradigmatic locations where general jurisdiction is appropriate over a corporation are its place of incorporation and its principal place of business." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1069 (9th Cir. 2015) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 137–38 (2014)). Indeed, "[o]nly in an 'exceptional case' will general jurisdiction be available anywhere else." *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014) (citing *Daimler*, 571 U.S. at 139 n.19).

Because Vivos is a Delaware corporation with its corporate headquarters in Delaware, Compl. ¶ 3, and because Innova is a Delaware limited liability company that resides in Virginia, *id.* ¶ 4, California is not a "paradigmatic location[] where general jurisdiction is appropriate over" Vivos and Innova. *See Ranza*, 793 F.3d at 1069. Accordingly, Plaintiff bears the burden of showing that this is an "exceptional case" where general jurisdiction is nevertheless appropriate.

9
Case No. 20-CV-03679-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

*See Martinez*, 764 F.3d at 1070.

Plaintiff's renewed motion for default judgment provides three reasons that Innova and Vivos are subject to general jurisdiction in California. *See* Mot. at 18–20. First, Plaintiff asserts that "Innova has been registered to do business in California since at least December 5, 2016, it has a California agent for service of process, and has maintained an office [in California] since registration in 2016." Mot. at 18. Second, Plaintiff asserts that Innova has "entered into service contracts with California technology companies, such as IDC," and that Innova "maintained a bank account in California where it received funding advances from [Plaintiff] to conduct its business in California." Mot. at 18–19. Third, Plaintiff contends that Innova's contacts with California subject Vivos to general jurisdiction because "Vivos is a holding company which owned Innova's membership interests." *Id.* at 20.

As an initial matter, the Court notes that Plaintiff relies almost entirely on documents submitted with the instant motion, not on allegations in the complaint. *See* Mot. at 17–21. Indeed, the only relevant fact alleged in the complaint is that Innova has "entered into service contracts with California technology companies, such as IDC." *Id.* at 18 (citing Compl. ¶ 16). Accordingly, because one of the factors the Court must consider is "the sufficiency of the complaint," the Court finds that Plaintiff's reliance on facts not alleged in the complaint weighs against a finding of general jurisdiction at this stage. *See Eitel*, 782 F.2d at 1471–72.

Regardless, even taking all of Plaintiff's assertions regarding personal jurisdiction into account, Plaintiff has failed to show that this is an "exceptional case" where general jurisdiction over a nonresident is appropriate. As the United States Supreme Court has explained, the fact that a "corporation 'engages in a substantial, continuous, and systematic course of business'" in a state does not by itself subject a corporation to general jurisdiction in the state. *See Daimler*, 571 U.S. at 123. In *Daimler*, the United States Supreme Court held that a global manufacturer of luxury vehicles was not subject to general jurisdiction in California even though the manufacturer made $4 billion of sales in California annually and had an agent with "multiple California-based facilities." *Id.* In the instant case, Plaintiff has not attempted to explain why Innova and Vivos are

different from any other nonresident corporation that does business in California, let alone why Innova and Vivos's contacts with California are more substantial than those considered and rejected in *Daimler*. Thus, although the facts described by Plaintiff tend to establish that Innova and Vivos do business in California, they do not show that Innova and Vivos are "essentially at home" in California such that general jurisdiction is appropriate. *See Goodyear*, 564 U.S. at 919.

Thus, the Court concludes that Plaintiff has not established general jurisdiction over Innova and Vivos.

### B. Plaintiff Has Failed to Show that Innova and Vivos Are Subject to Specific Personal Jurisdiction in California

Plaintiff argues that the Court has specific jurisdiction over Innova and Vivos with respect to Plaintiff's declaratory judgment and breach of contract claims because those claims arise from the Professional Services Agreement ("PSA") between Innova and IDC. ECF No. 62 at 19–21. For the reasons below, the Court rejects Plaintiff's argument.

Under Ninth Circuit law, specific personal jurisdiction over a nonresident defendant is appropriate when (1) the nonresident defendant "purposefully direct[s] his activities or consummate[s] some transaction with the forum or resident thereof; or perform[s] some act by which he purposefully avails himself of the privilege of conducting activities in the forum"; (2) the claim "arises out of or relates to the defendant's forum-related activities"; and (3) the exercise of jurisdiction is reasonable. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). If the plaintiff succeeds in satisfying the first two prongs, the burden shifts to the nonresident defendant to "present a compelling case" that the exercise of jurisdiction would not be reasonable. *Id.*

Plaintiff's arguments regarding specific jurisdiction rely on the same facts as Plaintiff's arguments regarding general jurisdiction. *See* Mot. at 19–20. As discussed, the only relevant fact alleged in the complaint is that Innova has "entered into service contracts with California technology companies, such as IDC." *Id.* at 18 (citing Compl. ¶ 16). Because one of the factors the Court must consider is "the sufficiency of the complaint," the Court finds that Plaintiff's

11
Case No. 20-CV-03679-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

reliance on facts not alleged in the complaint weighs against a finding of specific jurisdiction at this stage. *See Eitel*, 782 F.2d at 1471–72.

Regardless, the Court considers all of Plaintiff's arguments in support of specific jurisdiction. Plaintiff's strongest argument is that the Professional Services Agreement ("PSA") with IDC, who is a California resident, subjects Innova and Vivos to jurisdiction in California. *See* Mot. at 18–19. According to Plaintiff, its claims against Innova and Vivos arise from the PSA because Plaintiff "seeks relief determining Plaintiff's rights to the accounts owed by IDC to Innova." *Id.* at 20.

However, the United States Supreme Court has held that, under the due process clause, a nonresident defendant is not subject to jurisdiction in a forum simply because the defendant has made a contract with a resident of the forum. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985) ("If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot."). Instead, to determine whether a contract with a resident of a forum subjects a nonresident to personal jurisdiction in the forum, courts must evaluate "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Id.* at 479. California state courts have interpreted these principles to mean that "'the breach of a contract made and to be performed in the state' may be sufficient to support the exercise of personal jurisdiction" over a nonresident. *See Roman v. Liberty University, Inc.*, 162 Cal. App. 4th 670, 679 n.1 (2008) (quoting *Martin v. Detroit Lions, Inc.*, 32 Cal. App. 3d 472 (1973)).

Applying this standard to the instant case, Plaintiff has failed to show that the PSA subjects Innova and Vivos to personal jurisdiction in California. Apart from the fact that IDC is a California resident, Plaintiff provides no details connecting the PSA to California. Plaintiff does not, for example, contend that Innova's officers entered California to negotiate the PSA or that Innova's consultants came to California to fulfill their duties under the PSA. Indeed, Plaintiff's complaint contains just a single allegation regarding the performance of the PSA:

12

> Plaintiff is informed and believes, and based thereon alleges, that on or about July 5, 2018, Innova and IDC entered into a Professional Service Agreement ("PSA") pursuant to which Innova located and supplied personnel ("Contractors") to IDC or IDC's End Customers per IDC's specifications.

Compl. ¶ 16. The full PSA, which Plaintiff incorporates by reference, *see id.*, does not provide additional support. The PSA makes clear that Innova's consultants worked with IDC's *clients*, not with IDC itself, and states only that IDC's clients were "located in USA and Canada." Compl., Exhibit C § 1. Accordingly, the PSA provides no information about whether Innova's consultants performed any work in California. *Id.* Without such information, the Court cannot conclude that the PSA was a "contract made and to be performed in the state," let alone that the PSA subjects Innova and Vivos to personal jurisdiction in the state. *See Roman*, 162 Cal. App. 4th at 679 n.1.

Moreover, although Plaintiff's declaratory judgment claim may arise from the PSA, Plaintiff fails to explain why the breach of contract claim against Innova and Vivos, which alleges that Innova and Vivos defaulted on the Factoring and Security Agreement ("FSA"), arises from Innova and Vivos's California business activities. Specifically, Plaintiff's breach of contract claim alleges that Innova and Vivos "breached their obligations under the [FSA] by, among other things, failing to repay amounts owed under the [FSA], breaching [their] warranties not to assign/transfer [their] security and not providing Plaintiff prior notice in writing of [their] change of address." Compl. ¶ 96. In the instant motion, Plaintiff contends that Innova and Vivos's failure to repay loans from Plaintiff under the FSA is related to Innova and Vivo's California business activities because Innova and Vivos used these loans "to provide services to other California companies." Mot. at 20. However, Plaintiff provides no citations to support this contention, either in the form of allegations from the complaint or in the form of documents subject to judicial notice. *See id.* Accordingly, even if Innova's California business activities are substantial, Plaintiff has failed to show that the breach of contract claim "arises out of or relates to" those activities. *Schwarzenegger*, 374 F.3d at 802.

Thus, the Court finds that Plaintiff has not established personal jurisdiction over Innova and Vivos.

## V. LEAVE TO AMEND

The Court finds that allowing Plaintiff to amend its claims against Innova and Vivos or to file a third motion for default judgment would be futile and cause undue delay. *See Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008). Plaintiff's first motion for default judgment failed to address subject matter jurisdiction and personal jurisdiction at all. *See* ECF No. 59 at 1–2. The Court warned Plaintiff that failing to cure these jurisdictional deficiencies would result in the dismissal of a subsequent motion for default judgment with prejudice. *Id.* at 2.

Plaintiff's renewed motion for default judgment fails to establish personal jurisdiction. Indeed, the only relevant fact alleged in the complaint is that Innova has "entered into service contracts with California technology companies, such as IDC." Mot. at 18 (citing Compl. ¶ 16). This generic allegation provides no details connecting Innova and Vivos to California. Although Plaintiff cites other facts not alleged in the complaint, these facts also do not establish personal jurisdiction.

Plaintiff's failure to provide evidence establishing personal jurisdiction over a year after filing the complaint shows that leave to amend would be futile and cause undue delay. Thus, the Court dismisses Plaintiff's claims against Innova and Vivos with prejudice. *See Facebook, Inc. v. Pedersen*, 868 F. Supp. 2d 953, 961 (N.D. Cal. 2012) (explaining that when a plaintiff fails to establish personal jurisdiction in the context of a motion for default judgment, dismissal is appropriate).

## VI. CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's motion for default judgment and DISMISSES Plaintiff's claims against Innova and Vivos with prejudice.

**IT IS SO ORDERED.**

Dated: December 21, 2021

*Lucy H. Koh*
LUCY H. KOH
United States Circuit Judge[*]

---

[*] Sitting by designation on the United States District Court for the Northern District of California.